UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHNNIE HARRIS                                             CIVIL ACTION

VERSUS                                                     NO. 18-7685-DMD

SHERIFF MARLIN GUSMAN, ET AL.

## ORDER AND REASONS

Plaintiff, Johnnie Harris, a state prisoner, filed this *pro se* civil action against Orleans Parish Sheriff Marlin Gusman, Director of Medical Services "John Doe," and "Inmate Green." In the original complaint, plaintiff stated his claims as follows:

> Inmate Green attacked Johnnie Harris on 7-26-2018 and broke my jaw. Security intervened and escorted Mr. Harris to prison infirmary. Mr. Harris was examined by infirmary personnel and within 3 hours was transported to University Medical Center. I got a CAT-Scan and I was admitted overnight, also preped for operation Friday, July 27, 2018. At or around 3:45 p.m. the nurse informed me that the operation would be that following Monday 7/30/2018. At or around 5:45 p.m. I was discharged back into the custody of O.J.C. with a list of medications and a liquid diet. Upon returning to OJC I sat in medical while the medical staff put the lists into their computers. I was not administered any medication or nothing to eat. I phsycially layed in the rack in severe pain and hunger from 7/27/18 until 8/1/2018 when the operation was performed. I went without any food until 8/3/2018, and no medication until 8/1/2018.[1]

On October 25, 2018, a Spears hearing was held in this matter by United States Magistrate Judge Daniel E. Knowles, III.[2] Magistrate Judge Knowles also ordered Sheriff Gusman's counsel to produce both to the Court and to plaintiff certified copies of plaintiff's medical records and

---

[1] Rec. Doc. 3, pp. 4-5. Throughout this opinion, all quotations from the pleadings are verbatim without any alterations to grammar or spelling.
[2] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). Upon Magistrate Judge Knowles' retirement, this matter was reassigned to the undersigned United States Magistrate Judge. Rec. Doc. 20.

dietary records from the Orleans Justice Center for the period of July 26, 2018 through September 30, 2018.[3]

Plaintiff then filed an amended complaint in which he added four new defendants: Dr. Xuong Nguyen; Nurse Practitioner Deborah Gray; Major Nicole Harris; and Kitchen Supervisor Captain Taylor.[4]

Dr. Nguyen and Nurse Practitioner Gray thereafter filed two motions to dismiss, both of which were denied.[5] However, the Court dismissed plaintiff's claims against Orleans Parish Sheriff Marlin Gusman, Director of Medical Services "John Doe," and "Inmate Green" *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).[6]

Plaintiff then filed the instant motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[7] All remaining defendants opposed that motion.[8] In addition, Dr. Nguyen and Nurse Practitioner Gray filed a cross motion for summary judgment with respect to the claims against them.[9] Plaintiff was ordered to respond to that cross motion by no later than October 30, 2019;[10] however, he filed no response.

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a

---

[3] Rec. Doc. 9. Those records were subsequently received and filed into this federal record. Rec. Doc. 13.
[4] Rec. Doc. 11.
[5] Rec. Docs. 25, 26, 43, and 45; Harris v. Gusman, Civ. Action No. 18-7685, 2019 WL 1177730 (E.D. La. Feb. 20, 2019), adopted, 2019 WL 1168432 (E.D. La. Mar. 13, 2019); Harris v. Gusman, Civ. Action No. 18-7685, 2019 WL 2607214 (E.D. La. May 28, 2019), adopted, 2019 WL 2603667 (E.D. La. June 25, 2019).
[6] Rec. Docs. 25 and 26; Harris v. Gusman, Civ. Action No. 18-7685, 2019 WL 1177730 (E.D. La. Feb. 20, 2019), adopted, 2019 WL 1168432 (E.D. La. Mar. 13, 2019).
[7] Rec. Doc. 51.
[8] Rec. Docs. 53 and 54.
[9] Rec. Doc. 54.
[10] Rec. Doc. 56.

rational trier of fact to find for the nonmovant. <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." <u>Taita Chemical Co., Ltd. v. Westlake Styrene Corp.</u>, 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); <u>accord</u> <u>Provident Life and Accident Ins. Co. v. Goel</u>, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." <u>Ragas v. Tennessee Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. <u>Id.</u>; <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1429 (5th Cir. 1996).

### **Claims Against Dr. Nguyen**

Plaintiff states his claims against Dr. Nguyen as follows:

On 7/27/2018 upon my return from U.M.C. to Orleans Justice Center I was escorted to medical where they received and entered my paper-work into their data-base. Doctor Nguyen began to exam and probe my face, mouth, but mainly my jaw. Asked me what was my pain level. I replied not bad at the moment but I know that

3

medication will start to wear off. He told me that he would have the nurse give me something at last med-pass and he sent an urgent memo to the kitchen because I have a full-liquid diet. I received nothing. On the 31st of July I was brought back to medical. Dr. Nguyen again asked me about my pain-level. I informed him when when [sic] my jaw shifts the pain is blinding and it has been that since I last saw you Friday July 27th. After laughing and admitting that he completely forgot about me he gave me 100 mgs of Ibuprofen for a broken jaw. I informed him that I still hadn't eaten since Wednesday [sic] July 26th. He told me I'll survive until I received it. I didn't get my liquid diet until Friday August 3rd, 2018.[11]

In his motion for summary judgment, plaintiff argues that he is entitled to judgment as a matter of law with respect to those claims. In his opposition and cross motion for summary judgment, Dr. Nguyen argues that plaintiff misstates the underlying facts of the case and that the true facts show that plaintiff's constitutional rights were not violated.

In support of his opposition and cross motion, Dr. Nguyen has submitted a sworn affidavit. In that affidavit, Dr. Nguyen states that he had already left the jail by the time plaintiff returned from the hospital on evening of July 27, disputing the allegation that he examined plaintiff on that date. However, Dr. Nguyen notes that a liquid diet was ordered for plaintiff on July 28, and he further states:

12. On July 31, 2018, I conducted my first examination of Harris since his return from UMC. Harris was alert with stable vital signs and no fever. I documented Harris had a right mandible fracture with pain and swelling for which a surgery to repair the injury was scheduled for August 2, 2018. I further reviewed Harris' medical record from UMC, ordered to continue his medication, and directed that Harris receive a full liquid, no chew diet.

13. On August 1, 2018, I saw Harris again ahead of his upcoming surgery. I again ordered a full liquid diet for Harris. Additionally, I ordered Harris apply ice to the affected area, adhere to a lifting restriction, and keep the surgical extremity elevated. For pain, I continued ibuprofen 100 mg/5mls and further ordered tramadol 50 mg x 3 days. I also informed Harris he was to follow up with sick call 1 week post surgery and all recommendations received from UMC will be ordered.

---

[11] Rec. Doc. 11, pp. 1-2.

14. After my exam of Plaintiff on August 1, 2018, I issued a separate order for a full liquid diet, which was to include a "boost liquid meal replacements" for each meal twice per day. A special diet order form was completed and provided to the kitchen.[12]

Dr. Nguyen also submitted a copy of plaintiff's medical records. Those records reflect that: (1) on July 28, 2018 plaintiff was prescribed a "Liquid diet for 6 weeks";[13] (2) on July 31, 2018, Dr. Nguyen again ordered a "FULL liquid, no chew diet" for plaintiff;[14] (3) on August 1, 2018, Dr. Nguyen yet again prescribed a full liquid diet for four to six weeks;[15] (4) on August 1, 2018, Dr. Nguyen also ordered that plaintiff be given Boost liquid meal replacements for two days;[16] and (5) on August 3, 2018, Dr. Nguyen extended the order for the Boost meal replacements for an additional ten days.[17] Plaintiff has not offered any evidence to rebut those medical records.

Federal law provides that all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. Specifically, an inmate's constitutional right to medical care is violated if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "Non-life-threatening injuries are a serious medical need where the injuries

---

[12] Rec. Doc. 55-3, pp. 2-3 (medical record citations omitted).
[13] Rec. Doc. 54-4, p. 120.
[14] Id. at p. 129.
[15] Id. at pp. 116, 127, and 154-55.
[16] Id. at pp. 119, 139, and 154-55.
[17] Id. at p. 138.

induced severe pain." Oakley v. Hudson, 670 F. App'x 291, 292 (5th Cir. 2016). In the instant case, Dr. Nguyen does not dispute that plaintiff's broken jaw constituted a "serious medical need."

However, Dr. Nguyen argues that the claims against him nevertheless fail on the "deliberate indifference" prong of the analysis. Regarding that prong, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. … [T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted).

The Court finds, and Dr. Nguyen does not dispute, that a prison official's denial of proper care, including a liquid diet, to an inmate with a broken jaw can constitute deliberate indifference. See, e.g., Esquivel v. Doe, Civ. Action No. 3:12-CV-316, 2013 WL 4482741 (S.D. Tex. Apr. 19, 2013); see also Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (allegations that defendants failed to provide a prescribed liquid diet to a prisoner with broken jaw were actionable). However, Dr. Nguyen argues, and this Court finds, that he did not deny plaintiff a liquid diet. As noted, the medical records show that a liquid diet was *repeatedly* prescribed for plaintiff. After he returned from the hospital on the evening of July 27, a liquid diet was promptly ordered for him the following day. Dr. Nguyen then again ordered a liquid diet on July 31, when he first personally examined plaintiff, and then ordered it yet again on August 1. Therefore, it is clear that Dr. Nguyen *prescribed* the liquid diet, which was the part of the task for which he was responsible. If other

individuals thereafter did not *deliver* the liquid diet as prescribed, their lapse did not result in any liability on the part of Dr. Nguyen, because he cannot be held vicariously liable for the actions or inactions of others. See, e.g., Perniciaro v. Lea, 901 F.3d 241, 259 (5th Cir. 2018) ("[T]here is no vicarious or *respondeat superior* liability under § 1983.").

The foregoing conclusion is not altered even if, as plaintiff alleges, Dr. Nguyen laughed and made cavalier comments when plaintiff complained. Although such behavior is unprofessional, a poor bedside manner is not alone actionable or indicative of deliberate indifference. See, e.g., Jones v. Ledet, Civ. Action No. 19-10969, 2019 WL 6040091, at *5 (E.D. La. Oct. 22, 2019), adopted, 2019 WL 6036706 (E.D. La. Nov. 14, 2019).

Lastly, to the extent that plaintiff is complaining that Dr. Nguyen should have prescribed stronger pain medication, that claim likewise fails. Plaintiff concedes, and the medical records show, that Dr. Nguyen prescribed pain medication. Although plaintiff would have preferred a *different* medication, a prisoner has no constitutional right to be prescribed a particular pain medication, and the mere fact that he disagrees as to which pain medication is appropriate simply is not actionable under § 1983. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994) (a refusal to provide an inmate with the specific pain killers he requests does not rise to the level of a constitutional violation). That is true even if the medication chosen by Dr. Nguyen was not as effective as an alternative plaintiff would have preferred, because the fact that a prisoner's medical care "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir.

1992); see also Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). Moreover, where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. Gobert, 463 F.3d at 346; Williams, 1994 WL 733493, at *2; Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

For all of these reasons, plaintiff cannot establish that Dr. Nguyen acted with deliberate indifference in this case. Therefore, Dr. Nguyen is entitled to judgment in his favor as a matter of law on that basis.[18]

### Claim Against Nurse Practitioner Deborah Gray

Plaintiff states his claim against Nurse Practitioner Deborah Gray as follows:

> Monday July 30th while I was outside of the 1st Floor triage Nurse Gray asked me how I was feeling. I told her I was in a lot of pain and asked her could she please give me something because I have not been given anything for my pain. She told me that she could not give me anything without seeing my chart. I asked her could she check it for me please. She blatantly told me, no.[19]

Both plaintiff and Gray argue that they are entitled to judgment as a matter of law with respect to this claim. In support of her argument, Gray has submitted a sworn affidavit. In that affidavit, she states:

> 5. On July 26, 2018, I saw Plaintiff after he suffered a fractured jaw in an altercation. I diagnosed a suspected fractured jaw ordered [sic] the inmate to be emergently transferred to University Medical Center (UMC) for care and treatment of his injuries.

---

[18] In light of this conclusion, the Court need not address the alternative argument that plaintiff failed to exhaust his administrative remedies.
[19] Rec. Doc. 11, p. 2.

6. On August 8, 2018, Plaintiff presented to clinic for a one week post-operative exam. I examined Plaintiff noting his jaw remained wired and no complaints. Plaintiff reported that he received his pain medication and a soft diet without any problems and that he has a follow up clinical appointment with the oral maxillofacial surgeon. I recommended Mr. Plaintiff [sic] return to clinic after his appointment with the outside specialists.

7. I conducted no additional care between these encounters. Plaintiff received regular follow up care from the medical department on numerous occasions between July 26, 2018 and August 8, 2018.

8. On July 30, 2018, Plaintiff did not present to the facility's clinic with a pre-existing clinical appointment for a non-emergent health need.

9. All inmates are advised on how to access health care services as part of the receiving process. If an inmate presents complaints of clinical symptoms in a submitted request or at sick call, inmates are scheduled for the next available providers' clinic.

10. All clinical encounters are conducted in private and not to be observed or overheard by correctional personnel unless the individual poses a probable risk to the safety to the healthcare provider. The policy protects the privacy interests of the inmate by ensuring healthcare needs are discussed and healthcare services are delivered in private.

11. When approached by an inmate for a non-emergent medical need without a pre-existing appointment, I will advise the inmate that a clinical appointment is necessary before any care and treatment can be provided.

12. At no time did I knowingly disregard or act with deliberate indifference to any serious medical need identified by Plaintiff.[20]

Even in plaintiff's version of the events, he does not allege that Gray's refusal to assist him occurred during a medical appointment, and he presents no evidence to rebut Gray's factual allegations. Further, plaintiff's medical records show that, on May 18, 2018, he acknowledged in writing that he had been "instructed on and received information on how to obtain/access medical

---

[20] Rec. Doc. 55-5, pp. 1-3 (medical record citations omitted).

services" and "instructed on the sick call process."[21] Therefore, even if Gray refused to assist plaintiff with a non-emergency medical complaint because he had not followed the jail's procedures for requesting a medical appointment, that refusal is not indicative of deliberate indifference and is not actionable. See, e.g., Kitchen v. Webre, Civ. Action No. 13-6705, 2014 WL 2566065, at *5 (E.D. La. May 14, 2014) ("It is not a constitutional violation for prison officials to require inmates to submit 'sick call' requests for non-emergency medical concerns."); see also Alexander v. Texas Department of Criminal Justice, Civ. Action No. H-16-3520, 2017 WL 5749548, at *3 (S.D. Tex. Nov. 28, 2017) ("[Prisoner]'s allegation that a nurse practitioner told him to submit a sick call request to see a physician about his need for pain medication does not establish that he was denied care with the requisite deliberate indifference for purposes of stating a claim under the Eighth Amendment."); Curtis v. Gonzales, Civ. Action No. SA-09-CV-0911, 2010 WL 3928521, at *3 (W.D. Tex. Oct. 5, 2010) (Nowak, M.J.) ("Rather than ignore [the prisoner]'s complaints, [prison] employees instructed [the prisoner] to comply with prison procedures for seeking medical treatment. Such conduct does not evince a wanton disregard for a serious medical need.") (adopted by Garcia, J., on December 10, 2010); Maxwell v. Epps, No. 4:04CV168, 2007 WL 4287712, at *2 (N.D. Miss. Dec. 4, 2007).

Because plaintiff cannot establish that Nurse Practitioner Gray acted with deliberate indifference in this case, she is likewise entitled to judgment in her favor as a matter of law on that basis.[22]

---

[21] Rec. Doc. 54-4, p. 39.
[22] In light of this conclusion, the Court need not address the alternative argument that plaintiff failed to exhaust his administrative remedies.

**Claims Against Major Nicole Harris and Captain Taylor**

Plaintiff does not expressly discuss the claims against Major Nicole Harris and Captain Taylor, the kitchen supervisor, in his motion for summary judgment. However, to the extent that the motion also seeks summary judgment against Harris and Taylor, they have opposed the motion.

Plaintiff states his claim against Major Nicole Harris as follows:

Monday July 30th I stopped Major Harris while was making rounds and I expressed to her my injury and I was not receiving no kind of medicine or had not eaten since Thursday July 26th 2018. She asked me what exactly did I wanted her to do about it? I asked could she just look into it for me. She told me that she has nothing to do with medical. I said alright well could you see why I haven't my liquid diet yet since you're over security. She told me to just write Captain Taylor that's her department.[23]

Plaintiff states his claim against Captain Taylor as follows:

I wrote and complained to Captain Taylor since 7/30/2018 that I had not received my full liquid diet. I personally watched a nurse enter my paper-work into the computer system and for me not to be able to eat until 8/3/2018 there's no excuse. Captain Taylor never responded to me personally. Somebody told me that they were just informed of my diet and they sent a form for me to sign for my diet (5) days after it was ordered and it still took (2) more days just to receive my first meal since 7/26/2018.[24]

For the following reasons, the Court finds that plaintiff has not established that he is entitled to judgment as a matter of law with respect to either Harris or Taylor.

Based on plaintiff's allegations, it appears Harris simply informed him that he was complaining to the wrong person. If he was complaining that he had not been prescribed adequate pain medication or a liquid diet, his complaint should have been directed to the medical department; if he was complaining that a prescribed liquid diet had not been delivered to him, his

---

[23] Rec. Doc. 11, pp. 2-3.
[24] Id. at p. 3.

complaint should have been directed to the food service department. In his motion for summary judgment, plaintiff fails to establish that Harris, whom he identifies as a security officer, had any control over either of those two departments. Absent such a showing, plaintiff is not entitled to judgment in his favor with respect to this claim, because it is not unconstitutional to require a prisoner to address his complaint to the correct department in accordance with the applicable grievance procedure. See Haddix v. Burris, No. C-12-1674, 2013 WL 2950655, at *2 (N.D. Cal. June 14, 2013) ("[P]rison officials may require inmates to comply with regulations that have established procedures for recurring issues without violating an inmate's constitutional rights.").

As to Taylor, plaintiff has presented no evidence that she was personally aware that he was not receiving his liquid diet or that she was in any way involved with the failure to provide the diet. Without such a showing of Taylor's personal involvement, plaintiff likewise has not established that Taylor violated his rights. See Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Even if members of the kitchen staff were responsible for plaintiff being denied his liquid diet, Taylor cannot be held liable for their actions or inactions simply because she was their supervisor. See Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) ("In a § 1983 suit … – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").

For these reasons, plaintiff has not met his burden to establish that he is entitled to judgment as a matter of law on his claims against Harris and Taylor; therefore, his motion for summary judgment on those claims must be denied. Further, because Harris and Taylor, unlike Dr. Nguyen and Nurse Practitioner Gray, did not file a cross motion for summary judgment, a final determination of their liability, if any, is for another day.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed by plaintiff, Rec. Doc. 51, is **DENIED**.

**IT IS FURTHER ORDERED** that that the cross motion for summary judgment filed by Dr. Nguyen and Nurse Practitioner Gray, Rec. Doc. 54, is **GRANTED** and the claims against those defendants are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this __12th__ day of December, 2019.

*Dana M. Douglas*
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**