UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHNNIE HARRIS                                                              CIVIL ACTION

VERSUS                                                                      NO. 18-7685-DMD

SHERIFF MARLIN GUSMAN, ET AL.

## ORDER AND REASONS

Plaintiff, Johnnie Harris, filed this *pro se* civil action while incarcerated at the Orleans Justice Center. He sued Orleans Parish Sheriff Marlin Gusman, Director of Medical Services "John Doe," and "Inmate Green." In the original complaint, plaintiff stated his claims as follows:

> Inmate Green attacked Johnnie Harris on 7-26-2018 and broke my jaw. Security intervened and escorted Mr. Harris to prison infirmary. Mr. Harris was examined by infirmary personnel and within 3 hours was transported to University Medical Center. I got a CAT-Scan and I was admitted overnight, also preped for operation Friday, July 27, 2018. At or around 3:45 p.m. the nurse informed me that the operation would be that following Monday 7/30/2018. At or around 5:45 p.m. I was discharged back into the custody of O.J.C. with a list of medications and a liquid diet. Upon returning to OJC I sat in medical while the medical staff put the lists into their computers. I was not administered any medication or nothing to eat. I phsycially layed in the rack in severe pain and hunger from 7/27/18 until 8/1/2018 when the operation was performed. I went without any food until 8/3/2018, and no medication until 8/1/2018.[1]

On October 25, 2018, a Spears hearing was held in this matter by United States Magistrate Judge Daniel E. Knowles, III.[2] Magistrate Judge Knowles also ordered Sheriff Gusman's counsel to produce both to the Court and to plaintiff certified copies of plaintiff's medical records and dietary records from the Orleans Justice Center for the period of July 26, 2018 through September 30, 2018.[3]

---

[1] Rec. Doc. 3, pp. 4-5. Throughout this opinion, all quotations from the pleadings are verbatim without any alterations to grammar or spelling.
[2] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). Upon Magistrate Judge Knowles' retirement, this matter was reassigned to the undersigned United States Magistrate Judge. Rec. Doc. 20.
[3] Rec. Doc. 9. Those records were subsequently received and filed into this federal record. Rec. Doc. 13.

Plaintiff then filed an amended complaint in which he added four new defendants: Dr. Xuong Nguyen; Nurse Practitioner Deborah Gray; Major Nicole Harris; and Captain Cathy Taylor.[4]

The Court thereafter denied two motions to dismiss filed by Dr. Nguyen and Nurse Practitioner Gray, but it dismissed the claims against Orleans Parish Sheriff Marlin Gusman, Director of Medical Services "John Doe," and "Inmate Green" pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).[5]

Plaintiff then filed a motion for summary judgment on the remaining claims pursuant to Rule 56 of the Federal Rules of Civil Procedure,[6] and Dr. Nguyen and Nurse Practitioner Gray filed a cross motion for summary judgment with respect to the claims against them.[7] The Court denied plaintiff's motion but granted defendants' motion, thereby dismissing the claims against Dr. Nguyen and Nurse Practitioner Gray.[8]

Major Harris and Captain Taylor thereafter filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[9] Although the Court granted the motion with respect to Major Harris, it denied the motion with respect to Captain Taylor.[10]

Plaintiff then filed a motion for summary judgment with respect to Captain Taylor.[11] That motion was denied.[12]

---

[4] Rec. Doc. 11.
[5] Rec. Docs. 25, 26, 43, and 45; Harris v. Gusman, Civ. Action No. 18-7685, 2019 WL 1177730 (E.D. La. Feb. 20, 2019), adopted, 2019 WL 1168432 (E.D. La. Mar. 13, 2019); Harris v. Gusman, Civ. Action No. 18-7685, 2019 WL 2607214 (E.D. La. May 28, 2019), adopted, 2019 WL 2603667 (E.D. La. June 25, 2019).
[6] Rec. Doc. 51.
[7] Rec. Doc. 54.
[8] Rec. Doc. 60; Harris v. Gusman, Civ. Action No. 18-7685, 2019 WL 6770021 (E.D. La. Dec. 12, 2019).
[9] Rec. Doc. 61.
[10] Rec. Doc. 64; Harris v. Gusman, Civ. Action No. 18-7685, 2020 WL 730305 (E.D. La. Feb. 13, 2020).
[11] Rec. Doc. 67.
[12] Rec. Doc. 68.

Both Captain Taylor and plaintiff have now filed cross motions for summary judgment with respect to the sole claim remaining in this lawsuit.[13] In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); accord Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to

---

[13] Rec. Docs. 70 and 74.

defeat a properly supported motion for summary judgment. Id.; Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Plaintiff stated his remaining claim against Captain Taylor as follows:

I wrote and complained to Captain Taylor since 7/30/2018 that I had not received my full liquid diet. I personally watched a nurse enter my paper-work into the computer system and for me not to be able to eat until 8/3/2018 there's no excuse. Captain Taylor never responded to me personally. Somebody told me that they were just informed of my diet and they sent a form for me to sign for my diet (5) days after it was ordered and it still took (2) more days just to receive my first meal since 7/26/2018.[14]

In a subsequent pleading, plaintiff added the following allegations:

To farther substantiate Plaintiff's case Dr. Xuong Nguyen stated that he himself sent multiple urgent notices to Captain Taylor and the kitchen staff concerning Plaintiff's liquid diet. So to say that Captain Taylor was unaware of the situation is not true.
… Because by Doctor Xuong Nguyen statement alone tells the Court that his urgent notices with straight to her computer or her desk.[15]

Additional light was shed on this claim by evidence submitted in connection with Dr. Nguyen's previous cross motion for summary judgment. For example, Dr. Nguyen submitted a sworn affidavit in which he stated that he had already left the jail by the time plaintiff returned from the hospital on evening of July 27. However, Dr. Nguyen noted that a liquid diet was ordered for plaintiff on July 28, and he further stated:

12. On July 31, 2018, I conducted my first examination of Harris since his return from UMC. … I documented Harris had a right mandible fracture with pain and swelling for which a surgery to repair the injury was scheduled for August 2, 2018. I further reviewed Harris' medical record from UMC, ordered to continue his medication, and directed that Harris receive a full liquid, no chew diet.

13. On August 1, 2018, I saw Harris again ahead of his upcoming surgery. I again ordered a full liquid diet for Harris. …

---

[14] Rec. Doc. 11, p. 3.
[15] Rec. Doc. 63, pp. 4-5.

4

> 14. After my exam of Plaintiff on August 1, 2018, I issued a separate order for a full liquid diet, which was to include a "boost liquid meal replacements" for each meal twice per day. A special diet order form was completed and provided to the kitchen.[16]

Dr. Nguyen also submitted a copy of plaintiff's medical records. Those records showed that: (1) on July 28, 2018, plaintiff was prescribed a "Liquid diet for 6 weeks";[17] (2) on July 31, 2018, Dr. Nguyen again ordered a "FULL liquid, no chew diet" for plaintiff;[18] (3) on August 1, 2018, Dr. Nguyen yet again prescribed a full liquid diet for four to six weeks;[19] (4) on August 1, 2018, Dr. Nguyen also ordered that plaintiff be given Boost liquid meal replacements for two days;[20] and (5) on August 3, 2018, Dr. Nguyen extended the order for the Boost meal replacements for an additional ten days.[21] However, nothing in the record supports the claim that these orders were directed to Captain Taylor.

In her motion for summary judgment, Captain Taylor does not dispute plaintiff's allegation that he was not timely provided with the liquid diet pursuant to the foregoing orders – or, for that matter, that such a failure could violate his constitutional rights.[22] Nevertheless, she argues that *she* cannot be held liable for that failure because plaintiff cannot show that she was personally involved in the delays in providing the liquid diet or personally aware that he was not receiving it.

---

[16] Rec. Doc. 55-3, pp. 2-3 (medical record citations omitted).
[17] Rec. Doc. 54-4, p. 120.
[18] Id. at p. 129.
[19] Id. at pp. 116, 127, and 154-55.
[20] Id. at pp. 119, 139, and 154-55.
[21] Id. at p. 138.
[22] As noted in this Court's prior rulings, an inmate's constitutional rights are violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). Captain Harris does not appear to contest either that plaintiff's broken jaw was a serious medical need or that a failure to provide a prescribed liquid diet could constitute deliberate indifference. See Esquivel v. Doe, Civ. Action No. 3:12-CV-316, 2013 WL 4482741 (S.D. Tex. Apr. 19, 2013) (allegations that prison officials were aware that inmate was suffering from a broken jaw yet declined to take the steps necessary to insure that he received proper care, including a liquid diet, could suffice to state a claim of deliberate indifference); see also Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (allegations that defendants failed to provide a prescribed liquid diet to a prisoner with broken jaw were actionable).

Moreover, Captain Taylor presented evidence showing that plaintiff did not submit his first administrative grievance concerning his failure to receive his liquid diet until August 2, 2018, at 8:23 a.m.[23] She also presented evidence showing that plaintiff did not submit an administrative grievance *directed to her* until *August 3, 2020*, at 3:50 p.m.,[24] and she notes that even plaintiff himself concedes that he then received his liquid diet *that very same day*.[25] Plaintiff has submitted no evidence in rebuttal.

These facts pose a particular problem for plaintiff because "*[p]ersonal involvement* is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (emphasis added). Without any evidence showing that Captain Taylor was personally involved in the kitchen's failure to provide plaintiff with a liquid diet or any evidence showing that she was personally aware of that failure at any time prior to the grievance submitted to her attention on August 3, 2018, at 3:50 p.m., plaintiff cannot meet his burden of proof on such a claim. That remains true even if other members of the kitchen staff were in fact responsible for him being denied his liquid diet, because Taylor cannot be held liable for their actions or inactions simply because she was their supervisor. See Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) ("In a § 1983 suit … – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").

---

[23] Rec. Doc. 70-3, p. 15.
[24] Id. at p. 14. Captain Taylor submitted a medical record showing that plaintiff was offered, but declined, his liquid diet at 7:00 a.m. on August 3. Rec. Doc. 70-4, p. 2. It is unclear whether he disputes that fact. See Rec. Doc. 74, pp. 1-2. Regardless, that is immaterial to his claim against Captain Taylor, because that would have been *before* she was personally placed on notice of his complaint at 3:50 p.m.
[25] Rec. Doc. 3, p. 5 ("I went without any food until 8/3/2018 ….").

Of course, a supervisory official can also be held liable for a constitutional violation resulting from her own failure to train or supervise her subordinates. However, with respect to claims proceeding under that theory, the United States Fifth Circuit Court of Appeals has held:

> In order to survive summary judgment against a § 1983 claim for supervisory liability, a plaintiff is required to create a dispute of fact that (1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference.
> … Deliberate indifference is a stringent standard of fault, requiring proof that a [defendant] disregarded a known or obvious consequence of his action … Deliberate indifference can be demonstrated in two ways. First, a plaintiff may demonstrate that a [defendant] had notice of a *pattern of similar violations.* Second, a plaintiff may demonstrate liability based on a *single incident* if the constitutional violation was the highly predictable consequence of a particular failure to train.

Davidson v. City of Stafford, 848 F.3d 384, 397 (5th Cir. 2017 (emphasis added; citations and quotation marks).

Plaintiff clearly has not offered evidence of the first type. He has pointed to no evidence whatsoever showing there were prior incidents involving a failure to provide an inmate with a medically prescribed diet, much less that Captain Taylor was aware of any such prior incidents.

Further, as to the second method for showing such deliberate indifference, the United States Fifth Circuit Court of Appeals initially acknowledged the existence of the "single incident" exception in Brown v. Bryan County, 219 F.3d 450 (5th Cir. 2000). However, in doing so, the court took care to note that a plaintiff seeking to impose liability under that theory faces a daunting burden: he must be able to show the defendant's "unmistakable culpability and clearly connected causation." Id. at 461.

The Fifth Circuit subsequently observed that "[t]he single incident exception … is a narrow one, and one that we have been reluctant to expand." Burge v. St. Tammany Parish, 336 F.3d 363, 373 (5th Cir. 2003). Moreover, courts have been quick to distinguish Brown by noting that the

finding of liability in that case stemmed from the particularly egregious facts involving the use of excessive force by a twenty-one year old, untrained reserve deputy with a history of violent behavior.[26] Because such egregious facts are not present in most cases, the exception is rarely found to be applicable. See Littell v. Houston Independent School District, 894 F.3d 616, 627 n.6 (5th Cir. 2018) ("We count only one published 'single incident' failure-to-train case in our circuit in which the plaintiff prevailed.").

Here, plaintiff has presented no evidence establishing that the "single incident" exception would apply. In fact, he has not even *alleged* any egregious facts analogous to those in Brown, any facts concerning the training protocols for kitchen staff at the Orleans Justice Center, or any facts concerning the level of supervision of the kitchen staff.

At the end of the day, plaintiff has presented no evidence whatsoever that Captain Taylor was personally involved in this incident or that she failed to adequately supervise or train her staff. Therefore, she is indeed entitled to summary judgment on the claim against her.

---

[26] See, e.g., Curran v. Aleshire, 67 F. Supp. 3d 741, 759 (E.D. La. 2014) ("[Brown] contains three underpinnings…. First, the court found that the sheriff provided *no* training or supervision (at least not formally) to the offending officer. Second, the court observed the background of the officer at issue, which included the following: no prior experience or education in law enforcement; twenty-one years of age; arrests for assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, driving with a suspended license, nine moving traffic violations, an outstanding arrest warrant; and, an "excessive number of takedown arrests" in his few weeks on the job similar to but preceding the central incident in that case. Third, … the court explained why it upheld a finding that the sheriff had notice of the officer's background. It came to this conclusion on the basis of the family relationship between the sheriff and the officer, the small size of the police department, the arrests that the sheriff had authorized the officer to make, and the sheriff's recent review of the officer's background file made available to him containing the information regarding his arrests." (citations omitted)), appeal dismissed, 800 F.3d 656 (5th Cir. 2015); Williams v. City of Cleveland, Civ. Action No. 2:10cv215, 2012 WL 3614418, at *18 (N.D. Miss. Aug. 21, 2012) ("The Fifth Circuit has considered single violation liability several times, and, with only one exception in some thirty years since Monell, has consistently rejected application of the single incident exception. The sole exception, Brown v. Bryan County, involved a failure to train a neophyte on the constitutional limits to the use of force. The facts of Brown demonstrate that single violation liability applies *only in extreme circumstances*. In Brown, the offending officer was the sheriff's nephew who had been on the job for only a few weeks and had no education or experience whatsoever in law enforcement. Moreover, shortly before joining the sheriff's office, he had been arrested for several crimes, including assault and battery." (emphasis added; citations omitted)), aff'd, 736 F.3d 684 (5th Cir. 2013); Burrell v. Adkins, Civ. Action No. 3:01CV2679, 2008 WL 130789, at *2 (W.D. La. Jan. 10, 2008) ("The facts of Brown are illuminating. There, the direct offender was a reserve officer (not a full-fledged deputy) who had been hired with *no* experience and *no* training and who had already demonstrated a propensity for unnecessarily rough treatment of arrestees over just a few weeks on the job.").

Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed by Captain Taylor, Rec. Doc. 70, is **GRANTED** and that the claim against her is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's cross motion for summary judgment, Rec. Doc. 74, is **DENIED**.

Because the foregoing rulings dispose of the only remaining claim in this litigation, **IT IS FURTHER ORDERED** that the final pretrial conference scheduled for September 14, 2020, at 1:30 p.m., and the jury trial scheduled to commence on September 28, 2020, at 8:30 a.m., are hereby **CANCELED**.

New Orleans, Louisiana, this \_\_\_30th\_\_\_ day of July, 2020.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**